UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

| AUTOMOTIVE RENTALS, INC., | HONORABLE JOSEPH E. IRENAS |
| SIEMENS WATER TECHNOLOGIES |  |
| CORP., and HYDROCARBON | CIVIL ACTION NO. 09-6186 (JEI) |
| RECOVERY SERVICES, INC. |  |
|  | **OPINION** |
| Plaintiffs, |  |
|  |  |
| v. |  |
|  |  |
| KEITH HUBER, INC., |  |
|  |  |
| Defendant. |  |

**APPEARANCES:**

SWARTZ CAMPBELL, LLC
by: Vincent Joseph Iozzi, Esq.
Two Liberty Place
28th Floor
50 South 16th Street
Philadelphia, PA 19102
    Counsel for Plaintiffs

HACK, PIRO, O'DAY, MERKLINGER, WALLACE & McKENNA, PA
By: Michael J. Leegan, Esq.
30 Columbia Turnpike
PO BOX 941
Florham Park, NJ 07932
    Counsel for Defendants


**IRENAS**, Senior District Judge:

    These claims stem from events that occurred on September 11, 2007 when a water vacuum truck owned by Plaintiff Automotive Rentals, Inc. ("ARI") caught fire in Orlando, Florida and

destroyed the vehicle and surrounding areas of Universal Studios. ARI purchased the vehicle from Defendant Keith Huber, Inc. ("Huber") and rented the vehicle to a subsidiary of Plaintiff Siemens Water Technologies Corp. ("Siemens"). The subsidiary is now known as Hydrocarbon Recovery Services, Inc. ("Hydrocarbon"). Plaintiffs ARI, Siemens, and Hydrocarbon have brought claims against Huber for negligence, breach of express and/or implied warranties, and revocation of acceptance of the vehicle.

Presently before the Court is Defendant Huber's Motion to Dismiss for Improper Venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), or Alternatively to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).  For the reasons stated below, Huber's Motion under 28 U.S.C. § 1406(a) will be granted, and the case will be transferred to the Southern District of Mississippi. Defendant's Alternative Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is dismissed as moot.[1]

## I.

Defendant Huber manufactures and sells industrial vacuum trucks to commercial customers.  Huber's facilities are located in Mississippi.  (Def.'s Mot. to Dismiss ¶ 7.)  Plaintiff ARI provides a variety of services to help companies manage their car

---

[1] This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332.

and truck fleets, including purchasing and licensing vehicles to those companies. In May 2007, ARI contacted Huber to inquire about purchasing the vehicle that is the subject of this litigation. (Def.'s Reply Br. in Supp. of Mot. to Dismiss ("Def.'s Reply Br.") 4.) Huber and ARI then exchanged several faxes regarding the vehicle, its specifications, and the payment invoice.[2] Huber and ARI agreed on a purchase price and specified that ARI would arrange for delivery of the truck from Huber's Mississippi facilities to Florida. Following this agreement, ARI purchased the truck from Huber for $242,412.35. On August 28, 2007, a third-party delivery company retrieved the vehicle from Huber in Gulfport, Mississippi on behalf of ARI and delivered it to Siemens in Orlando, Florida. Once there, the vehicle was registered to Siemens with ARI Fleet listed as the owner. (Am. Compl. ¶¶ 24-25.)

On September 11, 2007, within its first days of service, the vehicle caught fire while extracting liquid at Universal Studios. Plaintiffs assert the vehicle combusted. The fire consumed the vehicle and caused damage to surrounding areas of Universal

---

[2] Specifically, Huber faxed ARI the vehicle's specifications, a request for ARI's purchase order, and an invoice requesting payment of the balance of the purchase price. ARI and Huber sent numerous faxes to each other. (Am. Compl. ¶¶ 16, 18.) In addition, Huber mailed the vehicle's availability as well as the manufacturer's statement of origin, Huber's Bill of Sale, chassis warranty information, and the paid invoice to ARI. (Am. Compl. ¶¶ 18-21.)

Studios. (Am. Compl. ¶¶ 26-28.) This suit followed.

## II.

Venue is proper under 28 U.S.C. § 1391(a)(1) in "a judicial district where any defendant resides . . . ." A corporation is deemed to reside in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Additionally, venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." "In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994).[3]

If venue is properly laid, a case may be transferred to a another district in which the action might have been brought for the convenience of parties or in the interest of justice pursuant to 28 U.S.C. § 1404(a). However, in the event that venue is improper, this Court may dismiss the case under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a). 28 U.S.C. § 1406(a) also provides that, in the interest of justice, the Court has

---

[3] It is unnecessary to address venue under 28 U.S.C. § 1391(a)(3), as Plaintiffs have not asserted venue under that provision.

4

discretion to transfer the case to a district where the suit could have been brought. *See Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 462 (3d Cir. 1995) (finding that if venue is shown to be improper through a 12(b)(3) motion, then the district court may transfer the case pursuant to 28 U.S.C. § 1406(a)).

### III.

Defendant Huber argues that venue is improper under 28 U.S.C. § 1391(a)(1) and (2) and that, as a result, this case should be dismissed or transferred. Plaintiffs, on the other hand, contend that venue is proper, as Huber is subject to personal jurisdiction in New Jersey, and the claims at bar arose out of Huber's purposeful contacts with ARI. Thus, the venue inquiry consists of two questions: first, whether Huber has sufficient contacts with New Jersey such that it is subject to personal jurisdiction in this state, and, second, whether a substantial portion of the events out of which this claim arose took place in New Jersey.

If venue is improper in the District of New Jersey, this Court has discretion to dismiss the claims or to transfer the case to an appropriate forum. Huber argues that the case should be transferred to the Southern District of Mississippi, while Plaintiffs submit that the Middle District of Florida is the

appropriate venue.  Thus, the third issue before the Court is whether, in the event venue is improper, to transfer this case to Florida or Mississippi.  The Court will address each issue in turn.

1

Huber argues that venue is improper pursuant to 28 U.S.C. § 1391(a)(1), as it is not subject to personal jurisdiction in New Jersey.  Plaintiffs counter that Huber's contacts are sufficient for this Court to exercise personal jurisdiction over Huber, as Huber purposefully availed itself of the laws of New Jersey by engaging in negotiations with ARI and with other customers over the course of 28 years.  However, for the reasons stated below, the Court finds these contacts are insufficient to exercise personal jurisdiction over Huber.

This Court has personal jurisdiction to the extent authorized by the state in which it sits.  Fed. R. Civ. P. 4(e).  The New Jersey long-arm statute extends jurisdiction as far as is allowed by the strictures of the Due Process clause, incorporated under the Fourteenth Amendment.  N.J. Ct. R. 4:4-4; *see Carteret Savings Bank, FA. v. Shushan*, 95 F.2d 141, 145 (3d Cir. 1992).  To assert personal jurisdiction over a nonresident corporate defendant, due process requires that the defendant "has certain minimum contacts with [the forum] such that the maintenance of

the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotations omitted) (*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

Personal jurisdiction may take two forms: general and specific jurisdiction. The Court will address each in turn.

**(i)**

Specific jurisdiction exists when the plaintiff's claims arise out of the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (*citing Helicopteros*, 466 U.S. at 408). Determining whether a court may exercise specific jurisdiction requires a three-part inquiry. First, the defendant must have purposefully directed its activities toward the forum state. *Id.* Second, the plaintiff's claim must arise out of or be related to those activities. *Helicopteros*, 466 U.S. at 414. Third, if the first two requirements are met, the court asks if jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

The first factor of a specific jurisdiction analysis inquires into whether a defendant has purposefully directed its activities toward the forum state. Plaintiffs contend that Huber's contacts with ARI regarding the sale of the vacuum truck

7

are enough to demonstrate that Huber purposefully directed its activities toward New Jersey. Specifically, Plaintiffs point to the fact that Huber and ARI exchanged faxes negotiating the terms of the contract, that the contract for sale was made in New Jersey, and that two of Plaintiff's claims are for revocation of acceptance and breach of express and/or implied warranties. (Pls.' Mem. in Opp. to Mot. to Dismiss ("Pls.' Mem.") 16.) However, neither the contract alone, nor the faxes regarding product information are sufficient to extend jurisdiction over Huber. *See Burger King*, 471 U.S. at 478 (holding that a contract alone cannot support personal jurisdiction), *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) (finding that faxes and telephone calls negotiating the details of a contract do not constitute purposeful activity necessary to support personal jurisdiction).

ARI and Huber did not contemplate any further dealings within the state of New Jersey beyond the formation of the contract: Huber manufactured the truck in Mississippi, and ARI arranged for a third party to pick up the vehicle there and deliver it to Florida. At no point did either party expect Huber to engage in any activity within New Jersey under the terms of the contract. *See Burger King*, 471 U.S. at 479 (holding that contemplated future consequences of the contract must be taken into account when determining personal jurisdiction).

8

Accordingly, the Court finds that Huber did not purposefully direct its activities towards New Jersey. *See Isenberg v. Yanni's Remodeling*, No. 07-3646, 2007 U.S. Dist. LEXIS 80899, at *10-11 (E.D.Pa. Oct. 31, 2007) (finding that wire communications from New Jersey residents into Pennsylvania were not enough to establish minimum contacts when contract was performed in New Jersey).

The second factor in a specific jurisdiction analysis is whether the claims arise out of the defendant's contacts with the forum state. Plaintiffs bring three claims against Huber: negligence, breach of express and/or implied warranties, and revocation of acceptance. Although Plaintiffs' Amended Complaint does not specify in what way Huber was negligent, presumably the claim is for negligence in manufacturing the vehicle. Since the vehicle was manufactured in Mississippi, any negligence would have occurred there. Regarding ARI's breach of warranty claims, under any applicable law in this case, breach of warranty occurs at the time and place of acceptance. *See* U.C.C. § 2-714 (2004). Thus, as the vehicle was accepted by a third party in Mississippi on behalf of ARI, the alleged breach of warranty would have occurred there. (Pls.' Mem. 6.) Similarly, Plaintiffs' claim for revocation of acceptance arises out of ARI's acceptance of the truck, which occurred in Mississippi. For these reasons, this Court finds that Huber does not have the minimum contacts

9

with New Jersey necessary to support specific jurisdiction.[4]

**(ii)**

Plaintiffs also argue that Huber is subject to general jurisdiction in New Jersey. A district court has general jurisdiction over a defendant who has "continuous and systematic" contacts with the forum state, and when the claim does not arise out of or relate to those contacts. *Helicopteros*, 466 U.S. at 415-16. "[T]he threshold for satisfying the requirements for general jurisdiction . . . is substantially higher than in specific jurisdiction cases." 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1067.5 (3d ed. 2010).

Huber's contacts with New Jersey do not support general jurisdiction. Although Huber has customers with New Jersey addresses, they constitute only one percent of Huber's customer base, amounting to 42 customers over a 28 year period. (Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br.") 10.) *See Kimball v. Countrywide Merch. Servs.*, No. 04-3466, 2005 WL 318752, at *3 (E.D.Pa. Feb. 8, 2005) (finding that a business that did not have sales exceeding one percent of the business's total sales in the forum was not subject to general jurisdiction in the forum state). Further, Huber does not maintain an office in New

---

[4] As Huber's contacts with New Jersey do not meet the first two factors of specific jurisdiction, it is unnecessary to address the third factor.

10

Jersey, advertise in New Jersey, or employ any New Jersey residents. *See BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 262 (3d Cir. 2000) (denying general jurisdiction over a Taiwanese corporation as it had no personnel or facilities in the United States, nor had it advertised or solicited business in the United States). Plaintiffs also assert that a Huber salesman traveled to New Jersey on occasion.[5] However, the presence of one salesman would not confer general jurisdiction over Huber. *See Regan v. Loewenstein*, No. 06-0579, 2007 WL 2007970, at *4 (E.D.Pa. July 3, 2007) (finding that the occasional presence of business agents in Pennsylvania could not be characterized as continuous or systematic contacts). As such, Huber's contacts with New Jersey are not continuous and systematic, and this Court does not have general jurisdiction over it.

**2**

Huber claims, in addition, that venue is improper under 28 U.S.C. §1391(a)(2), which states that an action may be brought in a district in which a substantial portion of the events giving rise to the claim occurred. Although Plaintiffs do not indicate which events occurred in New Jersey, it can be inferred that they believe ARI's negotiation of the contract from New Jersey

---

[5] Huber disputes having a salesman assigned to New Jersey, pointing to the fact that it never reimbursed any of its salesmen for travel to that state.

11

constitutes a substantial portion of the events giving rise to the claim. (Pls.' Mem. 16.) To the contrary, as discussed *supra*, most of the events giving rise to the claims occurred outside of New Jersey. Accordingly, the Court finds that venue is not proper in New Jersey under 28 U.S.C. § 1391(a)(2).

### 3

As venue is improper in New Jersey, the Court moves to the next issue: where to transfer this case. When venue is improper,[6] 28 U.S.C. § 1406(a) provides that the Court may dismiss the action or, in the interest of justice, transfer the case to a venue where it could have been brought.[7] Huber requests that the case be transferred to the Southern District of Mississippi, while ARI prefers a transfer to the Middle District of Florida. For the reasons set forth below, this Court will transfer the action to the Southern District of Mississippi pursuant to 28 U.S.C. § 1406(a).

When deciding where to transfer a case, the court must weigh the private and public interests involved. *See Jumara*, 55 F.3d

---

[6] 28 U.S.C. § 1404(a) addresses venue transfers where venue is proper in the original forum. As venue is improper here, the transfer analysis takes place under 28 U.S.C. § 1406(a).

[7] This Court has discretion to dismiss the case under Fed. R. Civ P. 12(b)(3) or to transfer the case pursuant to 28 U.S.C. § 1406(a). *See Urrutia,* 91 F.3d at 462. Since the parties have both provided alternative forums in which this case may be litigated, the case will be transferred.

at 879.  The private interests include:  the plaintiff's forum preference, the defendant's forum preference, where the claim arose, the convenience of parties with regard to their relative physical and financial condition, the convenience of witnesses, and the location of books and records.  *Id.* at 879.  The public interests include:  the enforceability of the judgment, practical considerations for an expeditious trial, the relative court congestion in the two fora, the local interest in deciding local controversies, the public policies of the fora, and the familiarity of the judge with the applicable state law.  *Id.* at 879-80.

In their arguments, the parties only explicitly address the following factors:  the convenience of witnesses and the location of books and records.  Plaintiffs claim that the convenience of witnesses favors Florida because three witnesses reside there, (Pls.' Mem. 20) whereas Huber contends that it favors Mississippi, where its executives and employees are located.  (Def.'s Rep. Br. 6.)  Further, records pertinent to the case are located in both states:  the vehicle is located in Florida, (Pls.' Mem. 20) and Huber's records regarding ARI's purchase are located in Mississippi.  (Def.'s Br. 17.)  Given the arguments advanced by the parties, the factors are evenly matched.  However, the Court has discretion to examine other factors to determine the appropriate forum.  To that end, the Court will

consider what state's law applies to the claim, and thus which judge will be more familiar with the applicable law.

To determine which state's substantive law would apply, the Court looks to Florida and Mississippi's choice of law rules.[8] Plaintiffs bring claims for negligence, breach of implied and/or express warranty, and revocation of acceptance of the truck. In analyzing the choice of law, each claim must be assessed individually. *See Judge v. American Motors Corp.*, 908 F.2d 1565, 1568 (11th Cir. 1990) (finding that the Court must examine each issue to determine the applicable law).

With regard to the negligence claim, both Mississippi and Florida look to the Restatement (Second) of Conflict of Laws to determine the applicable law for tort claims.[9] It states, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ." In determining the state

---

[8] After a 28 U.S.C. § 1406(a) transfer, the transferee court's substantiative laws apply. *Lafferty*, 495 F.3d at 81. Further, a federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

[9] *See Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980) (adopting the "significant relationships test" as set forth in the Restatement (Second) of Conflict of Laws), *McDaniel v. Ritter*, 556 So.2d 303, 310 (Miss. 1989) ("Mississippi has ascribed to the most significant relationship test embodied in the Restatement (Second) of Conflict of Laws.").

with the "most significant relationship," the Court may take into account "the place where the injury occurred, the place where the conduct causing the injury occurred, the domicil, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145 (1971). As Plaintiff argues that the vehicle combusted due to an inherent defect, any conduct causing the injury would have occurred in Mississippi, where the vehicle was manufactured. Additionally, Huber is a resident of Mississippi, and no party is a Florida resident. As such, the Court finds that Mississippi has the most significant relationship to the occurrence and the parties, and so Mississippi law would govern the negligence claim.

The breach of warranty claim also requires the application of Mississippi law, though the two states use different approaches to reach that result. According to Mississippi law, if a breach of warranty claim has a reasonable relation to the state then Mississippi substantive law must apply. *See* Miss. Code Ann. § 75-1-105 (2010).[10] In Florida, on the other hand, a

---

[10] *See also Price v. Int'l Tel. and Tel. Corp.*, 652 F.Supp. 706, 710 (S.D.Miss. 1986) (finding that a breach of warranty claim must bear a reasonable relation to Mississippi before Mississippi law will apply under the terms of Miss. Code Ann. § 75-1-105 (2010)).

15

breach of warranty claim accrues at the place of delivery. *See Whittington v. Laney*, 566 So.2d 599, 600 (Fla. Dist. Ct. App. 1990) ("A cause of action for breach of warranty accrues where the goods are delivered."). Florida's commercial code states that if a contract does not require the seller to deliver the goods at the destination, then delivery is complete when the seller fulfills the shipment obligations of the contract. *See* U.C.C. § 2-401 (2004).[11]

In the case at bar, the sales invoice stated that ARI would arrange for delivery from Huber's plant in Mississippi to the site in Florida. As Huber was not required to deliver the vehicle to Florida, Huber completed the contractual terms of delivery when it released the vehicle to ARI's third-party transporter in Mississippi. Since the place of delivery was Mississippi, Florida's choice of law rules require Mississippi law to apply to the breach of warranty claim. Likewise, under Mississippi's commercial code, Mississippi law would apply to the breach of warranty claim, as the claim bears a reasonable relation to the state as the vehicle was manufactured and delivered in Mississippi. Therefore, Mississippi law would govern this claim.

---

[11] Both Florida and Mississippi have incorporated the U.C.C. into their respective state statutes. *See* Fla. Stat. Ann. § 672.401 (2010), Miss. Code Ann. § 75-2-401 (2010).

The Court finds that Mississippi law controls the revocation of acceptance claim as well. Acceptance occurs when the buyer takes the goods in the manner indicated by the contract. U.C.C. § 2-606 (2004). As the contract specified that ARI would take the goods from Huber in Mississippi through ARI's delivery company, ARI accepted the vehicle in Mississippi. The right to revoke acceptance of the vehicle arises from the buyer's acceptance of the vehicle. U.C.C. § 2-608 (2004). Since the vehicle was accepted in Mississippi, the right to revoke acceptance would be governed by Mississippi law.

Given that Mississippi law would apply to all three claims, and the other relevant factors do not weigh in favor of either forum, the Court finds that Mississippi is the proper venue for this case. Accordingly, this case should be transferred to the Southern District of Mississippi.

**IV.**

As venue is not proper pursuant to 28 U.S.C. § 1391(a)(1) and (2), the Court will grant Defendant's Motion under 28 U.S.C. § 1406(a) and will transfer the case to the Southern District of Mississippi. The Alternative Motion to Transfer under 28 U.S.C.

§ 1404(a) is dismissed as moot.[12]  This Court will issue an appropriate order.


July 29th, 2010                              s/ Joseph E. Irenas
                                          **JOSEPH E. IRENAS, S.U.S.D.J.**

---

[12] Many of the factors that support transfer to the Southern District of Mississippi under 28 U.S.C. § 1406(a) would suggest that a transfer to the same district might have been appropriate pursuant to 28 U.S.C. § 1404(a) if venue had been proper in the first instance.